UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LEWIS COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>INTERNATIONAL CONSOLIDATED AIRLINES GROUP, S.A., A SPANISH BUSINESS CORPORATION,<br><br>        Defendant. | Case No. 1:21-cv-01751<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court by way of Chicago's O'Hare International Airport. Plaintiff Michael Lewis Company ("Michael Lewis") and Defendant International Consolidated Airlines Group, S.A. ("IAG") are engaged in the airline business: Michael Lewis provides logistics and supply chain management to various airlines; IAG is the parent company of several airlines, including Iberia, Aer Lingus and British Airways ("BA"). The present dispute concerns IAG's alleged failure to pay Michael Lewis for catering products and services intended for airline customers of BA, Iberia and Aer Lingus' Chicago-based flights. [22] ¶ 9. Michael Lewis sues for breach of contract and quantum meruit on behalf of itself and Kiki's Gluten Free Foods, LLC ("Kiki's"), a third-party vendor that sold goods to Michael Lewis for the benefit of IAG. *Id.* ¶¶ 11–12, 29.

On June 16, 2021, IAG moved to dismiss the complaint on the basis of *forum*

*non conveniens*, requesting that the Court enforce a forum-selection clause contained in an agreement between Michael Lewis and IAG's subsidiary, BA. [26]; [27]. That clause identifies England as the exclusive place of jurisdiction. [27-2] §§ 36.1–36.2. In the alternative, IAG moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

For the reasons explained below, the Court grants Defendant's motion to dismiss on the basis of *forum non conveniens*.

## I. BACKGROUND[1]

Michael Lewis is an Illinois corporation retained by IAG to "provide catering products and services to its airport operations in Chicago, Illinois." [22] ¶ 2. IAG is a Spanish corporation that maintains its principal place of business in England. *Id*. ¶ 6. For many years, Michael Lewis has provided its services to IAG—namely, the purchase, storage and distribution of food, beverages and related products for IAG's airline customers traveling through Chicago. *Id*. ¶ 9.

According to Michael Lewis, the parties do not have a written contract. *Id*. ¶ 8. Instead, the only written agreement relevant to this dispute is a contract between Michael Lewis and BA, IAG's subsidiary (the "Agreement"), which expired in December 2020. *Id*. While IAG is not a signatory to that contract, IAG and Michael Lewis acted "pursuant to an oral agreement" with like terms and conditions. *Id*. In accordance with this oral agreement, Michael Lewis acquired goods from various

---

[1] The Court draws these alleged facts from Plaintiff's amended complaint [22].

2

suppliers on IAG's account, and IAG paid for and reimbursed Michael Lewis for any unused inventory. *Id.* ¶¶ 9–10. According to Michael Lewis, "IAG bore the risk of loss for the products that it wanted available for its subsidiary carriers' flights." *Id.* ¶ 10.

Notably, Michael Lewis purchased goods from Kiki's on IAG's behalf. The amended complaint provides that "Michael Lewis, as IAG's agent, purchased services and goods from Kiki's on IAG's account and represented to Kiki's that IAG would pay." *Id.* ¶ 12. In other words, as part of Plaintiff's supply chain services, Michael Lewis would purchase goods from third-party vendors, including Kiki's, with the understanding that the vendors would be paid by IAG—not Michael Lewis.

In 2020, as a result of the Coronavirus pandemic, airline traffic temporarily came to a screeching halt. With air travel facing new lows, Michael Lewis found itself saddled with a surplus of unused inventory intended for airline carriers, including carrier-branded commodities, perishables and pre-packaged meals. *Id.* ¶ 13. Michael Lewis contends that while other airlines reimbursed it for prior purchases made on their account, "IAG refused." *Id.* Despite Michael Lewis' repeated demands for repayment, "IAG advised Michael Lewis that it was terminating the relationship." *Id.*

Michael Lewis now turns to the courts. On February 18, 2021, Michael Lewis filed suit in the Circuit Court of Cook County, Illinois seeking compensatory damages amounting to more than $2.1 million. *Id.* ¶ 14. IAG removed the case to this Court

3

based on diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1); [1]. In June, Michael Lewis filed an amended complaint in response to Defendant's initial motion to dismiss for *forum non conveniens* or, alternatively, for failure to state a claim. [22]. In its amended complaint, Michael Lewis joins claims by Kiki's, which were assigned to Michael Lewis pursuant to an assignment of claims made "on or about May 26, 2021." *Id.* ¶ 16. IAG then filed the present motion, which Michael Lewis opposes. [26]; [27]; [30]; [31].

## II. LEGAL STANDARD

The principle of *forum non conveniens* "allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009); *Ledesma v. Marriott Int'l, Inc.*, No. 18-CV-3947, 2021 WL 2953145, at *1 (N.D. Ill. July 14, 2021). Stated more simply, a district court "may dismiss a case on *forum non conveniens* grounds when it determines that there are 'strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction.'" *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (quoting *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015)). While a dismissal for *forum non conveniens* is "committed to the sound discretion of the trial court," *id.*, "courts approach the doctrine with caution as it is an exceptional one that a court must use sparingly." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 950–

4

51 (N.D. Ill. 2019) (citations omitted). Indeed, the "exceptional nature of a dismissal for *forum non conveniens* means that a defendant invoking it ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Id.* at 951 (quoting *Deb*, 832 F.3d at 806).

The *forum non conveniens* analysis entails the same balancing-of-interests courts typically conduct in considering motions to transfer venue pursuant to 28 U.S.C. § 1404(a), wherein the district court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). The calculus changes, however, in the presence of a contractually valid forum-selection clause: in such cases, courts give no weight to a plaintiff's choice of forum and "should not consider arguments about the parties' private interests" because when "parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves for their witnesses, or for their pursuit of litigation." *Id.* at 63–64; *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018). Instead, courts consider only public-interest factors such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6. Because the public interest factors will rarely be determinative, the practical result is that forum-selection clauses control except in unusual cases. *In re Ryze*

*Claims Sols., LLC*, 968 F.3d 701, 705 (7th Cir. 2020) (quoting *Atl. Marine*, 571 U.S. at 64)).

On a motion to dismiss based on *forum non conveniens*, the court "assumes the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits," and "need not view the allegations of the complaint as the exclusive basis" for the decision. *Deb*, 832 F.3d at 809; *see also Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988). In addition, documents attached to a motion to dismiss are considered part of the pleadings if they are "referred to in the plaintiff's complaint and are central to his claim." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

### III. ANALYSIS

This Court must decide whether this action should be dismissed in light of the forum-selection clause nestled in the Agreement between Michael Lewis and BA, IAG's subsidiary. The forum-selection clause provides that each party "irrevocably submits to the exclusive jurisdiction of the English Courts in relation to all matters arising out of or in connection with this Agreement," which remains "governed by" and "interpreted in accordance with English Law." [27-2] §§ 36.1–36.2. Michael Lewis does not dispute the facial validity of the forum-selection clause, or that it identifies England as the contractual forum for claims relating to the Agreement. [30-2]. Instead, Michael Lewis argues that the forum-selection clause does not apply because: (1) IAG is not a party to the Agreement (nor, for that matter, is Kiki's); and

(2) Michael Lewis' claims turn on the terms of an "oral contract" between Michael Lewis and IAG and therefore fall outside the scope of the Agreement. [30] at 5–8. In addition, Michael Lewis maintains that the countervailing *forum non conveniens* factors militate against enforcing the forum-selection clause. *Id.* at 8. The Court takes each of these arguments in turn.

*First*, Michael Lewis cannot escape enforcement based on IAG's non-signatory status. As the Seventh Circuit has recognized, forum-selection clauses may be "enforced by or against a company that is under common ownership (for example as a parent and subsidiary) with—that is, an affiliate of—a party to a contract containing the clause." *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012). The test is whether the non-party is so "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993); *Adams*, 702 F.3d at 339 (collecting cases). If an "affiliation" or "mutuality" exists between the non-signatory and a contracting party, then enforcement is proper. *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1054 (N.D. Ill. 2015) ("To be sure, non-signatories sometimes can enforce forum selection clauses, but there must be an 'affiliation' or 'mutuality' with a contracting party.").

Here, as in *Adams*, the non-signatory (IAG) shares a corporate relationship with a signatory (BA). Michael Lewis concedes as much on the face of the operative complaint: "IAG is the parent company of a group of airlines including British

7

Airways (BA)." [22] ¶ 7–8. Because a clear "affiliation" between BA and IAG exists, IAG may enforce the forum selection clause. *See also* [27-2] § 33.1 ("Each member of the BA Group shall have the benefit of all rights, benefits and limitations provided for in this Agreement and accordingly shall be entitled to enforce this Agreement subject to and in accordance with its terms."). Michael Lewis bargained for and agreed to the clause as part of the contract with BA; it cannot now attempt to defeat that clause "by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit. If this were true, such clauses would be empty." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004); *J.P. Morgan Chase Bank, N.A. v.* McDonald, 760 F.3d 646, 652 (7th Cir. 2014) ("A forum-selection clause with a company would be worth little if it could be avoided by merely pursuing the company's affiliate or its employees as individuals."); *see also Organ v. Byron*, 434 F. Supp. 2d 539, 542 (N.D. Ill. 2005) (because plaintiff "bargained for and agreed" to the forum-selection clause, non-signatory defendants "do not lack standing to argue that Plaintiff is bound to that promise").

*Second*, the amended complaint's allegations demonstrate that Michael Lewis' claims against IAG are related to—and indeed, inseparable from—the written contract with BA. The Agreement provides that "[e]ach party irrevocably submits to the exclusive jurisdiction of the English Courts in relation to all matters arising out of or in connection with this Agreement." [27-2] § 36.2. To avoid this provision, Michael Lewis attempts to skirt the Agreement entirely. *See* [30] at 7 ("To be clear,

8

Plaintiff is expressly disavowing any claims here based on the BA Contract, and instead bases the Michael Lewis Claims on an oral contract and the course of dealing with IAG."). According to Plaintiff, IAG and Michael Lewis operated in accordance with an "oral agreement, the terms and conditions of which" are "generally consistent" with the terms of the Agreement. *Id.*; [22] ¶ 8. In so doing, Michael Lewis invites a construction of the Agreement to understand the terms of the alleged "generally consistent" oral contract (and/or course of dealing). More to the point, however, the core of Michael Lewis' claims is that IAG breached the parties' understanding that "IAG bore the risk of loss for the products that it wanted available for its subsidiary carriers' flights." [22] ¶ 10. As reiterated above, BA is a subsidiary of IAG. An oral contract between Michael Lewis and IAG, concerning the provision of services for BA, necessarily "aris[es] out of or in connection with" Michael Lewis' contract with BA. *See* [27-2] § 36.2. This concession shows the applicability of the forum-selection clause.

Moreover, the Seventh Circuit interprets the phrase "arises out of" broadly. *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) ("all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement"); *see also J.P. Morgan Chase Bank*, 760 F.3d at 650.[2] This proximity is particularly apparent in the context of a "package" of

---

[2] In support of its motion, IAG relies on English precedent that appears to accord with that of the Seventh Circuit: "English courts have held that '[t]he phrases *out of or in connection with* are wider than *under* the contract' and 'cover matters which arise out of the performance of the contract and in connection with that performance,' as well as 'disputes arising out of a second contract which is related

9

contracts, or cohesive contractual scheme. *Am. Patriot*, 364 F.3d at 889. In *American Patriot*, the Seventh Circuit permitted non-signatory defendants to enforce a forum selection clause against a signatory plaintiff for two reasons: (1) the non-signatory defendants were corporate affiliates with the other signatory; and (2) they signed other contracts with the plaintiff, which, taken together with the contract containing the forum-selection clause, formed a cohesive contractual scheme. 364 F.3d at 888–89. Michael Lewis' allegations are no different: Michael Lewis entered into an oral agreement with IAG that mimicked the terms of its contract with BA. [22] ¶ 8. Taken together, the written agreement with BA and the alleged oral contract with IAG form a contractual scheme outlining the rights and responsibilities of each party with respect to Michael Lewis' services. *Id.*; *see also* [27] at 12. The resolution of this dispute will turn on whether IAG breached its obligations pursuant to the parties' contractual relationship—a relationship "closely related" to (if not defined within) the Agreement. Michael Lewis cannot circumvent the forum-selection clause by attempting to assert a new theory of recovery (quantum meruit) or a new contract, and certainly not one "inextricably intertwined" with the Agreement. *Organ*,

---

to' to the original contract. *L. Brown & Sons Ltd. v. Crosby Homes (Nw.) Ltd.*, [2005] EWHC 3503 (Q.B. T.C.C.), Case No. HT 05 313, 2005 WL 4912923 (Dec. 5, 2005)." [27] at 12 (emphases added). Michael Lewis does not dispute that the choice-of-law provision calls for an application of English law; rather, Michael Lewis contends only that the Agreement is inapplicable here. [30] at 5. At the present juncture, the Court need not address any choice-of-law issues as neither party has challenged the underlying validity of the forum-selection clause. *See Atl. Marine*, 571 U.S. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."); *Ayyash v. Horizon Freight Sys., Inc.*, No. 15-CV-10296, 2018 WL 5994755, at *3 n.1 (N.D. Ill. Nov. 15, 2018) (acknowledging that the Seventh Circuit "applies the law of the jurisdiction whose law governs the rest of the contract" for determining the *validity* of a forum-selection clause).

10

434 F. Supp. 2d at 541–542 (recognizing that a plaintiff cannot escape a forum-selection clause through a calculated selection of claims).

Nor can Michael Lewis circumvent the forum-selection clause by asserting related claims by additional non-parties. Michael Lewis contends that as the assignee of the Kiki's Claims, it "stands in the shoes of Kiki's, with all the same substantive rights—no more and no less," [30] at 8, and Kiki's cannot be haled into court in England based on Michael Lewis' contract with BA. *Id.* In response, IAG contends that the "question of IAG's obligation to provide reimbursement for non-party Kiki's sales to Plaintiff is part of, and encompassed within, Plaintiff's claim." [27] at 14. IAG points to the language of the Agreement: "'[e]ach party irrevocably submits to the exclusive jurisdiction of the English Courts in relation to all matters arising out of or in connection with this Agreement,' not particular claims, and it binds the parties without reference to the source of each separate claim." [31] at 5; [27-2] § 36.2. In essence, because Michael Lewis is asserting related claims (on behalf of Kiki's) against IAG, the terms of the Agreement still apply.

The Court agrees. The question vis-à-vis Kiki's is not whether Kiki's may be haled into English courts based solely on a forum-selection clause contained within a contract to which it is not a party, but rather whether Michael Lewis may be haled into English court based on the nature of those additional claims. Michael Lewis agreed to "submit[] to the exclusive jurisdiction of the English Courts in relation to all matters arising out of or in connection with this Agreement." [27-2] § 36.2. For

11

purposes of the present dispute, "Michael Lewis, as IAG's agent, purchased services and goods from Kiki's on IAG's account and represented to Kiki's that IAG would pay." [22] ¶ 12. Kiki's goods and services, therefore, were provided to Michael Lewis in accordance with Michael Lewis' contractual obligations to IAG and IAG's subsidiary carriers. As discussed above, those contractual obligations (oral or written) fall within the ambit of the forum-selection clause.

Because of the assignment, Michael Lewis may wield these related claims against IAG as if it were standing in Kiki's shoes—but it must do so in England. Were it otherwise, litigants would be able to ignore the Seventh Circuit's holding in *American Patriot* and evade the terms of a forum-selection clause by clever litigation tactics. *Am. Patriot*, 364 F.3d at 888; *see also Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 126 (S.D.N.Y. 1997) ("[I]f defendants were correct and a party could escape the effect of a forum selection clause by assigning or subrogating its rights, such a clause would serve little purpose, which is certainly not in line with the Supreme Court's view of the importance of such clauses.").

*Third*, a court faced with a motion for *forum non conveniens* based on a contractual forum-selection clause considers only the public-interest factors such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6. Plaintiff's choice of forum and its private convenience interests merit no

weight as "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972). As such, a forum-selection clause should control unless a party challenging its enforcement can prove that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15. Here, Michael Lewis argues against dismissal by pointing to Illinois' "overriding interest" in "vindicating the claims of small American companies against a multinational corporation that has stiffed its vendors." [30] at 10.

While the Court can consider "the local interest in having localized controversies decided at home," Michael Lewis has not demonstrated that the local interest is exceptional or unusual enough to warrant overriding the private agreement. *See, e.g.*, *In re Ryze Claims Sols.*, 968 F.3d at 712 (unusual cases include when the court does not have jurisdiction over one of the parties and cannot sever the claims, or when only one out of six defendants is bound by the forum-selection clause and splitting up the case would result in "substantially duplicative discovery and court proceedings"). While the Court remains sympathetic to the fact that this is a case "brought by an Illinois company . . . regarding services that were provided in Illinois," [30] at 10, "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63 (citations omitted). And, in all but

13

the "most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66. Absent exceptionality, the forum-selection clause must stand.

The other *forum non conveniens* public interest factors do not compel a different conclusion. Michael Lewis argues that because "the BA Contract does not apply," Illinois common law governs this dispute. [30] at 9. Not so. The Agreement is governed by English law, [27-2] § 36.1–36.2, which Michael Lewis does not dispute. To the extent the "generally consistent" terms of the oral contract between Michael Lewis and IAG differ on this front, the reviewing court may also need to consider Illinois common law. Resolving this case, then, will require an application of both English law (to the Agreement) and, if provided for in the oral contract or as understood by the parties, Illinois common law. The choice-of-law factor favors neither party.

Accordingly, the Court finds that the forum-selection clause in the Agreement mandates dismissal. Because the Court grants Defendant's motion to dismiss all claims on the basis of *forum non conveniens*, the Court need not address Defendant's other arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss [26] and dismisses all claims on the grounds of *forum non conveniens*.

Dated: March 22, 2022

        Entered:

        _____
        John Robert Blakey
        United States District Judge